P 961-081105-01

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BRENDA THOMAS,

     *Plaintiff,*

*v.*                                                                                CIVIL ACTION NO: 18-01264

                                                              SECTION: A

KFC CORPORATION, YUM
BRANDS, INC., YUM                                                     JUDGE: JAY C. ZAINEY
RESTAURANT SERVICES
GROUP, INC., KFC FRANCHISEE,              MAGISTRATE:

     *Defendants.*

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Defendants, West Quality Food Service, Inc. ("West"), and Liberty Mutual Fire

Insurance Company respectfully submits this Memorandum in Support of its Motion for

Summary Judgment of Plaintiff's claims. As demonstrated below, Plaintiff is unable to produce

factual support sufficient to establish that she would be able to satisfy her evidentiary burden of

proof at trial that consumption of any deleterious food purchased from Defendant, caused her

injuries.

### I.    Facts

Plaintiff, Brenda Thomas, has filed suit seeking damages for alleged injuries sustained on

October 1, 2016, at the premises commonly known as Kentucky Fried Chicken (KFC), located at 6009 Bullard Avenue in New Orleans, Louisiana. (Pl.'s Am. Compl. 2, ECF No. 35-2). Named defendant in her complaint is West Quality Food Service, Inc. ("West"), the operator of the restaurant under a franchise agreement with KFC.  Plaintiff's complaint alleges claims of both negligence and products liability stemming from her alleged partial consumption of a sandwich made with a fried rat "inclusive of the head and tail" in lieu of a fried chicken breast. (*Id.*) According to Ms. Thomas, after neither eating nor drinking all day, she left her home to get dinner and purchased a chicken sandwich meal in the KFC drive-through at 10:52 p.m. (Deposition of Brenda Thomas, attached as Exhibit 2, Pl.'s Dep. 17:13, 29:9-19). She testified that she then went home where she first opened her sandwich and began eating it, but stopped when she felt something "hard," at which point she took off the bun to check the sandwich and noticed what she described to be a tail and legs. (*Id.* at 31:21; 32:3; 33:13; 34:3). She testified that the sandwich was wrapped in a foil wrapper and on a bun and that she started chewing it. (*Id.* at 33:16-21).  She could not recall how many bites of the sandwich she had taken, but said "I was biting and chewing and swallowing. (*Id.* at 33:21-25).  Before returning to the restaurant the next day to return the sandwich, two photos were taken of the sandwich by Ms. Thomas's daughter, attached here as Exhibit 3.  When confronted with the two photos of the sandwich taken by her daughter after she allegedly chewed and swallowed it, she again insisted that she was chewing and swallowing the meat before she saw what she thought was a rat's tail. (*Id.* at 43:5-18).

The following Monday, Ms. Thomas presented to New Orleans East Hospital Emergency Department with general gastrointestinal complaints. (NOEH Records attached hereto as Exhibit 4). She testified in her deposition (*Id.* at 52:4-8) that she informed her providers during her ED

visit that she consumed a rat; however, the certified medical records contain no mention of same. (NOEH Records attached hereto as Exhibit 4).  Ms. Thomas was diagnosed with gastroenteritis and was treated with nausea medication and IV fluids, and discharged soon after arrival with a prescription for nausea medication and instructions to stay hydrated and follow up with her primary care provider. (*Id.*).  In addition to these physical complaints, Ms. Thomas has testified that she cannot eat since the incident and has started to see a psychiatrist and has lost 20-30 lbs. (Exhibit 2 - Pl.'s Dep. 58:1-14). Since the visit to the emergency room at NOEH on October 3, 2016, plaintiff has not voiced any complaints of nausea, vomiting or diarrhea to her primary care physician, Dr. Cooper.(Exhibit 5 Dr. Cooper's Dep. 45:1-5; 45:8-11; 46:9-18). She has only received psychological counseling and psychiatric treatment.

Contrary to her deposition testimony that she went to her primary care physician, Dr. Michelle Cooper, the following Monday, Dr. Cooper's medical records and her deposition testimony show that she first went to her on October 12, 2016.  It was on that date that plaintiff for the first time gave any history of having consumed a rat on October 1, 2016.  (*Id.* Dr. Cooper's Dep. 15:17-25; and 37:19-23).  Dr. Cooper further testified that plaintiff did not voice any complaints associated with gastroenteritis such as nausea, vomiting or diarrhea on October 12, 2016, or on any following office visits through 2018. (*Id.* at 45:1-5; 45:8-11; 46:9-18).

## II.  Law & Argument

### A.  Summary judgment standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file,

and affidavits filed in support of the motion demonstrated that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P.56(a); *Anderson v. Liberty Lobby, Inc.,* 106 S.Ct. 2505, 2509-2510 (1986).   The court must find "[a] factual dispute … [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.,* 882 F.2d 993, 996 (5th Cir.1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)(en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5thCir.1991).

### B. Negligence In the Deleterious Food Case

The Louisiana Supreme Court has held that the duty-risk analysis in negligence claims governs deleterious food cases. *See Porteous v. St. Ann's Cafe & Deli*, 97–0837 (La. 5/29/98), 713 So. 2d 454, 455. To succeed on a claim of negligence, the plaintiff must prove five elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct

was a legal cause of the plaintiff's injuries (the scope of liability, scope of protection, scope of duty element); and (5) proof of actual damages (the damages element). *Rando v. Anco Insulations Inc.*, 08–1163 (La. 5/22/09), 16 So. 3d 1065, 1086.

Under the undisputed facts of the case, Ms. Thomas cannot prove that consumption of deleterious food caused her injuries. First, she has no proof that the item allegedly consumed contained a dead rat. There was no biological testing of the object and the photographs submitted by plaintiff do not support that the object was anything other than a fried chicken tender.  More particularly, under the third element (cause-in-fact), the plaintiff must prove the existence of a causal relationship between the injury and the consumption of the food, *i.e.*, that it is more likely than not that the food's deleterious condition caused the injury. *See Landreneau v. Copeland's Cheese Cake Bistro*, L.L.C., 08–647 (La. App. 5 Cir. 1/13/09), 7 So. 3d 703, 706. Louisiana courts agree that the deleterious condition of the food may be inferred from the circumstances surrounding the injury. *Id.*; *Verrett v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 16-229 (La. App. 5 Cir. 12/7/16), 207 So. 3d 621, 628.

In cases in which there has been successful recovery, the plaintiff has shown that the food was consumed by him, and that no other food which might reasonably be assumed to have caused the illness had been consumed within a number of hours before or after the consumption of the suspect product. *Verrett* at 628-29 (finding that plaintiff must prove that the consumption of deleterious food caused her injuries when she noticed an insect floating in her soda after drinking from the cup); *Craig v. Albertson's Southco, Inc.*, 415 So. 2d 237, 238 (La. App. 2 Cir. 1982) (sustaining the manufacturer's exception of no cause of action on the basis that the jurisprudence requires the injury be caused by consumption and denying recovery to plaintiffs whose injuries resulted only from their observation of tainted food).

Here, the only evidence that Ms. Thomas **consumed** any of the sandwich that she alleges contained a fried rat is her own testimony. The emergency room records on October 3, 2017, do not support that she actually consumed a rat two nights before. There was no testing performed on the sandwich or on Plaintiff's stomach contents. There is no evidence through biological testing that the item sold was a rat. There is no evidence of any bacteria or other toxins obtained from Plaintiff's stomach contents that would be associated with consumption of a rat. It is well-settled that this is insufficient to withstand a motion for summary judgment. *Verrett* at 629. Furthermore, the photos provided by Ms. Thomas show an undisturbed chicken strip and bread with no human bite marks as one would expect to see if she consumed any of it. Therefore, even if this court were to hold that the item was a rat corpse and hence a deleterious food item, plaintiff still cannot satisfy the cause-in-fact element because there is no evidence to support the conclusion that her ingestion of this alleged substance caused her injuries. Her own photos, coupled with her failure to tell the first medical provider after the event that she had eaten a rat, doom her ability to establish consumption.

Generally in order to succeed in such a case, the plaintiff is required to show actual consumption, *i.e.*, ingestion of the alleged deleterious food product involved. *Verrett* at 628; *Craig* at 238. In *Hairston v. Burger King Corp.*, 33-587 (La. App. 2 Cir. 6/21/00), 764 So. 2d 176, a patron claimed to have become ill after eating a hamburger from a fast-food restaurant. She went to the emergency room the following day and was diagnosed with gastroenteritis. *Id.* at 178. Her doctor testified that he had diagnosed her as having acute gastroenteritis due to the nausea, vomiting, and diarrhea and, that while food poisoning is one of several possible causes of gastroenteritis, none of the tests he conducted revealed any bacteria that could have caused food poisoning. *Id.* The court affirmed the trial court's finding that the evidence was insufficient

to prove a causal relationship between patron's gastroenteritis and her consumption of hamburger, but merely established she was having severe gastric problems and that she had eaten restaurant's hamburger, given that patron's medical expert testified that even if food poisoning was the cause of patron's gastroenteritis, the food poisoning could have been caused by anything she ate from one hour to one week before she started having problems, and absent evidence that any of other 800 people who consumed same type of hamburger at restaurant that day developed food poisoning. *Id.*

Here, as in *Hairston*, Ms. Thomas was diagnosed by an emergency room physician with acute gastroenteritis due to the nausea, vomiting, and diarrhea. (Exhibit 4 - NOEH Records). However, not only is there no objective medical evidence of food poisoning, records of subjective complaints and history of illness provided by Ms. Thomas to her providers in the emergency room make no mention of her reporting that she ate possibly contaminated food, much less a fried rat as she alleges here. (*Id.*). Ms. Thomas has not offered, and is unable to offer, any medical or expert evidence that Defendant's food product was tainted or in a deleterious condition or that it caused her illness. No healthcare providers or other experts have indicated, stated, or opined that the sandwich was tainted or in a deleterious condition or that it caused Ms. Thomas to become ill. Lacking the required proof, West cannot be found liable and this claim must be dismissed.

Additionally, Ms. Thomas is also unable to satisfy the fourth element (scope of duty). Under the scope of duty element, the plaintiff must prove that the injury was within the scope of the protection afforded by the duty that is alleged to have been breached. *See Rando v. Anco Insulations Inc.*, 08–1163 (La. 5/22/09), 16 So. 3d 1065, 1086. This is ultimately a question of policy that requires determining whether the duty extends to or is intended to protect this

plaintiff from this type of harm arising in this manner. *See Am. Rebel Arms, L.L.C. v. New Orleans Hamburger & Seafood Co.*, 15–599 (La. App. 5 Cir. 2/24/16), 186 So.3d 1220, 1222. While this inquiry is purely a legal question, it depends on such factual determinations as foreseeability and ease of association. *Id.* A risk may not be within the scope of a duty where the circumstances of the particular injury to the plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty. *Id.* at 1222–23. The extent of protection owed by a defendant to a plaintiff is made on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms. *Id.* at 1223.

In deleterious food cases, Louisiana courts agree that "as a matter of policy, and practicality, the protection afforded by a restaurant's duty to its customers cannot extend to protect customers from harm caused by the customers' subjective perceptions of non-deleterious food." *Verrett* at 630; *see also*, *Anderson v. Piccadilly Cafeteria, Inc.*, 00–1666 (La.App. 1 Cir. 9/28/01), 804 So.2d 75, 76 (holding that an emotional response cannot be the basis for liability without proof that the food was in fact deleterious and that a restaurant has no duty to protect the consumer from an emotional response to her own negative perceptions).

Here, Ms. Thomas's medical treatment consists predominantly of psychiatric treatment. After her initial visit to the emergency room, she was referred by her primary care provider to Ochsner mental health where she has been receiving ongoing treatment. (Exhibit 5 Dr. Cooper's Dep. 18:17-22). She has also been referred by her attorney to psychiatrist, Dr. John Bick, whose report is attached hereto as Exhibit 6. However, these psychiatric records do nothing to support the instant claim. A restaurant has no duty to protect a customer from an emotional response to her own negative perception of what she alone thought was a rat. *Verrett* at 630; *see also*, *Anderson v. Piccadilly Cafeteria, Inc.*, 00–1666 (La.App. 1 Cir. 9/28/01), 804 So.2d 75.

Defendant's duty to its customers simply does not extend to protect plaintiff from harm caused by her own subjective perceptions of a rat in a sandwich that she didn't even consume.

### C.  Product liability and premises liability

Plaintiff also attempts to allege a claim under theories of premises liability and product liability. (Exhibit 1 - Pl.'s Am. Compl. 2, ECF No. 35-2). All delictual actions, including actions in premises liability and product liability, require proof of causation. *See Hebert v. ANCO Insulation Inc.*, 00–1929 (La. App. 1 Cir. 7/31/02), 835 So. 2d 483, 506. For the reasons above, because Ms. Thomas cannot prove that her injuries were caused by the sandwich, she likewise cannot succeed on these alternate theories of liability. Furthermore, to the extent Plaintiff relies on it, "[t]he implied warranty of fitness in [deleterious food cases] is designed to protect consumers from consuming food products containing deleterious substances and is not intended to protect against injuries caused by the mere observation of such substances." *Craig v. Albertson's Southco, Inc.*, 415 So. 2d 237, 238 (La. Ct. App. 1982).

### III. Conclusion

Plaintiff has failed to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof on the issues of causation and liability at trial. Consequently, no genuine issue of material fact exists, and the Motion for Summary Judgment of Defendants, West Quality Food Service, Inc., and Liberty Mutual Fire Insurance Company should be granted, dismissing Plaintiff's demands with prejudice, and at Plaintiff's expense.

Respectfully submitted,

S:/ JAMES J. KOKEMOR
**JAMES J. KOKEMOR (LA#07825)**
James.Kokemor@LibertyMutual.com
Law Offices of Robert E. Birtel

3850 N. Causeway Blvd. Suite 220
Metairie, LA  70002
Tel: (504) 837-7050
Fax:  866-547-7103
*Attorney for Defendants,*
*West Quality Food Service, Inc. and Liberty Mutual*
*Fire Insurance Company*


## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of March, 2019, I electronically filed the foregoing

with the Clerk of Court by using the CM/ECF system which will send a notice of electronic

filing upon counsel for all parties.

Respectfully submitted,

S:/ JAMES J. KOKEMOR
**JAMES J. KOKEMOR (LA#07825)**
James.Kokemor@LibertyMutual.com
Law Offices of Robert E. Birtel
3850 N. Causeway Blvd. Suite 220
Metairie, LA  70002
Tel: (504) 837-7050
Fax:  866-547-7103
*Attorney for Defendants,*
*West Quality Food Service, Inc. and Liberty*
*Mutual Fire Insurance Company*