UNITED STATES DISTRICT COURT

For the Eastern District of Louisiana

BRENDA THOMAS                         *

                Plaintiff        *               Civil Action No. 18-1264 (A) (4)

v.                                    *

                              *

KFC CORPORATION, et al.               *

                Defendants       *

\*     \*     \*     \*     \*     \*

## MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Brenda Thomas, and respectfully submits this memorandum in opposition to the motion for summary judgment of defendant West Quality food Service, Inc. (Document 47).

Statement of the Case

Plaintiff filed her Petition for Damages in Civil District Court for the Parish of Orleans, on 28 September 2017.  Document 1-3 at 1.  Defendants KFC Corporation, Yum Restaurant Services Group, LLC, and Yum Brands, Inc. filed their Notice of Removal on 7 February 2018. Document 1.  After plaintiff's Motion to Remand (Document 9) was denied on 15 May 2018 (Document 17), plaintiff dismissed without prejudice several parties from the litigation (Documents 30 & 31), amended her complaint (Document 39), and obtained a trial continuance (Document 41). Defendant thereafter filed its Motion for Summary Judgment; this timely opposition follows.

Law & Analysis

### Standard of Review

Summary judgment is proper only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a).  The court considers

1

all evidence in the light most favorable to the non-moving party. *Trevino v. Celanese Corp.*, 701 F.2d 397, 407 (5th Cir. 1983); *Matsushita Elec. Co. v. Zenith Radio Corp.* 475 U.S. 574, 577 (1986). A district court may not make credibility determinations or weigh the evidence on a Rule 56 Motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, (2000).

The moving party has the burden of showing that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *Williams v. Danos and Curole Marine Contractors, LLC*, 797 F.Supp.2d 712, 716 (E.D.La. 2011).

Once the moving party has carried its burden, the non-movant must come forward with specific facts showing a genuine factual issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment. *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993). A material fact is any factual dispute that might affect the outcome of the case under the governing substantive law. *Anderson* 477 U.S. at 248. To carry this burden, the party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers. *Anderson*, 477 U.S. at 252. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. The mere existence of a scintilla of evidence will be insufficient. *Anderson*, 477 U.S. at 252.

*Governing Substantive Law*

To determine whether a defendant is negligent, the case usually requires proof of five separate elements: (1) duty; (2) breach of duty; (3) cause-in-fact; (4) scope of liability or scope of protection; and (5) damages. *Porteous v. St. Ann's Cafe & Deli*, 97-837, p. 5 (La. 5/29/98), 713 So. 2d 454, 457.  A food provider, in selecting, preparing and cooking food, including the removal of injurious substances, has a duty to act as would a reasonably prudent man skilled in the culinary art in the selection and preparation of food.  *Id.*  In determining whether a restaurant breached its duty by failing to act reasonably in the selection, preparation and cooking of the food that contained a substance which caused injury, the court should consider, among other things, whether the injurious substance was natural to the food served and whether the customer would reasonably expect to find such a substance in the particular type of food served. *Porteous*, 97-837, p. 6, 713 So.2d at 457.

*Argument*

Defendant has argued generally that all of plaintiff's claims should be dismissed because, it contends, plaintiff is unable to bear her burden of proof at trial on several of the essential elements of her claim.  Defendant's primary argument is that plaintiff's testimony that she ate a fried rat should not be believed because of defendant's jaundiced interpretation of the photographs and medical records in this case.  Defendant's motion should be denied because this argument about plaintiff's credibility creates a question of fact for the jury, as described more fully, infra. This credibility question in particular is raised by defendant directly in its memorandum, even though it is not acknowledged to be genuine issue of fact for the jury; such questions are not properly resolved by the court as part of a motion for summary judgment.

3

I.     The Negligence Claim

A.  Duty

Defendant has not directly stated that plaintiff is unable to discharge her burden as to the existence of a duty owed to her by defendant.  In an abundance of caution, plaintiff points out that defendant operates the restaurant at issue in this matter (Exhibit C at 12, 30, 43, 52-55) and she was served food products by defendant's restaurant (Exhibit A at 31).  The *Porteous* court was unequivocal in stating that "In Louisiana, there is no statute which expressly addresses a commercial restaurant's duty to serve food free of injurious substances. There is, nonetheless, no doubt that there is and should be such a duty." *Porteous*, 97-837, p. 5, 713 So.2d at 457.  There is accordingly sufficient evidence to show the existence of a duty owed by defendant to plaintiff.

B.  Breach

Defendant argues that plaintiff is unable to discharge her burden of proving defendant's breach of the duty owed to her, which defendant characterizes as a requirement that she prove actual consumption of a deleterious food product.  Document 47-3 at 5 et seq.  Contrary to defendant's contentions, she can prove consumption of a deleterious food product.  Plaintiff otherwise respectfully disagrees with defendant's interpretation of the evidence and recitation of the law.

Defendant contends that there is no scientific proof that the deleterious food product at issue herein was, in fact, a fried rodent.  Document 47-3 at 6.  This contention is a red herring, even though defendant suggests in this connection that it is "well-settled" that lack of such testing is insufficient to survive summary judgment, citing to *Verrett v. Nat'l Union Fire Ins. Co*., 16-229 (La. App. 5 Cir. 12/7/16), 207 So3d 621, 629 for the proposition.  Id.  Defendant's position is incorrect for several reasons.  First, the *Verrett* court did not establish a requirement that a plaintiff

4

must produce biological testing of either the food item or the plaintiff's own stomach contents; rather, the court noted that the plaintiff's own physician therein testified that the symptoms were caused by observing rather than consuming an insect in her drink. *Verrett*, 16-229 at 10, 207 So.3d at 629. Second, by contrast, plaintiff respectfully contends that the applicable law is much more flexible than defendant's recitation:

> The courts have never compelled a plaintiff to produce an actual analysis of the food consumed in order to establish its unwholesome condition. Rather, the courts have been willing to infer the deleterious nature of the food consumed from the circumstances surrounding the illness. In all of the cases in which there has been successful recovery, the plaintiff has shown that the food was consumed by him, and that no other food which might reasonably be assumed to have caused the illness had been consumed within a number of hours before or after the consumption of the suspect product. The plaintiff has also had medical opinion to the effect that it was probable that his illness was caused by the consumption of the particular product involved. In addition, the successful plaintiffs in the above cases have been able to show some other independent circumstance, which tends to prove his case.

*Foster v. AFC Enters., Inc.*, 04-1014 (La. App. 3 Cir. 3/2/05), 896 So.2d 293, 296, writ denied, 05-0839 (La. 5/13/05) 902 So.2d 1027.

Contrary to defendant's argument, plaintiff is able to prove that she consumed the deleterious food product at issue. Though defendant has de-emphasized it, plaintiff testified that she "ate the rat" (Exhibit A at 42). This testimony alone is sufficient to generate a genuine issue of material fact as to the issue of whether she in fact consumed a deleterious food product and whether defendant breached its duty to her. The *Foster* inference of a deleterious nature is similarly warranted in this matter, insofar as plaintiff has testified that she has purchased this same type of product in the past, but that it was different this time: "hard" and "wasn't the same as what I've eaten before." Exhibit A at 35. She described that, upon further inspection, she saw a "tail" and "legs." Exhibit A at 32. She testified that physiological symptoms arose soon thereafter. Exhibit A at 48.

Defendant's mere incredulity of this testimony does not warrant the filing or granting of a motion for summary judgment precisely because credibility questions are for the jury. Defendant's unwillingness to credit plaintiff's testimony arose during plaintiff's deposition, when plaintiff was questioned about "I don't see any missing parts of the product where you would have bitten that off and swallowed it." Exhibit A at 42. Plaintiff very plainly answered "I had eaten the rat. The rat—the chicken was supposed to have been—it was bigger than the bun. The bun was smaller and I bit, I started chewing it" (Exhibit A at 43) and also:

> Q. So you only chewed the part of the tail that hangs out over the bun?
>
> A. No. I chewed the portion of the – it was supposed to have been the chicken. It wasn't chicken. It was a fried rat. It was hard. I bit into it and started chewing it and that's when I realized it was hard, as I was swallowing it, and that's when I started to try to examine it and that's when I saw the tail hanging from that and I realized what it was.
>
> Q. Did you swallow any part of the bread that made up the sandwich?
>
> A. The meat. It just was the meat, the top part of the meat. The meat was larger than the bread.

Exhibit A at 43. The plaintiff has accordingly testified that she ate a portion of the meat part of the sandwich that was hanging outside of the bread part. Plaintiff respectfully requests that the Court take judicial notice of the official images of the type of product at issue herein, which images KFC has disseminated through https://www.kfc.com/menu/sandwiches/chicken-littles, and which images demonstrate that the meat part of the sandwich is intended to be larger than the bread part. As plaintiff herein has testified that she purchased this sandwich from defendant and has testified how she ate the sandwich, she has raised an genuine issue of material fact.

Plaintiff's testimony furthermore negates defendant's additional argument that the photographs show no consumption of the sandwich. Document 47-3 at 6. Defendant has submitted the photographs at issue as an exhibit to its motion. Document 47-6. After some effort

(Exhibit A at 36-37), plaintiff authenticated the photographs at her deposition (Exhibit A at 38). Defendant argues that these images show no bite marks and therefore plaintiff is unable to discharge her burden of proof of breach of duty.  Defendant's argument however assumes too much in inferring from the axial view of the sandwich (as presented by the photographs) that there are no bite marks on the sagittal or coronal planes of the sandwich (which views are not photographed).  Given plaintiff's testimony that she commenced eating the meat part of the rat that hung outside of the bread part of the sandwich, it is irrational to draw the inference preferred by defendant.  Rather, the correct factual inference to draw under Rule 56 is that the photographs of the sagittal or coronal views of the sandwich will show bite marks, because that is how the testimony requires the photographs to be interpreted at this point, as well as fitting the common sense understanding of how people actually eat sandwiches, i.e., along the sagittal or coronal planes.  Furthermore, review of the photographs reveal a relatively thin parcel that exceeds the boundary of the bread, which plaintiff contends is a rodent tail in breading; the photographs on closer inspection reveal breaded parcels which appear to be curled up legs against the larger body. These are nonetheless questions of fact for the jury.

A further reason that defendant's contention is erroneous regarding the purported lack of scientific testing is because plaintiff contends that defendant took possession of the deleterious food product at issue and destroyed it prior to running any tests to show the nature of the product. Plaintiff testified that she contacted the restaurant on the day of her purchase of the deleterious food product and was instructed to return the deleterious food product to the restaurant on the following day.  Exhibit A at 44.  Plaintiff returned the deleterious food product to defendant on the day after its purchase.  Exhibit A at 45-46.  At that time, the restaurant took the deleterious food item from her and threw it in the trash.  Exhibit A at 46.  Defendant has furthermore denied

current possession of the deleterious food item in written discovery.  Exhibit D at 2.  Defendant, at its deposition, testified that it had internal security video surveillance on 2 October 2016, the date in question, but has not preserved the video from the date that plaintiff stated she returned to the store.  Exhibit C at 110-12.  Defendant also testified that it received notice via its guest hotline of plaintiff's incident on 6 October 2016.  Exhibit C at 102.  When asked if anyone reviewed the film from 2 October 2016 when the 6 October 2016 complaint was received, the corporation answered "not to my knowledge."  Exhibit C at 112.

Plaintiff respectfully contends that this constitutes spoliation of evidence of the surveillance recording, which would have shown, as she testified, that she returned the food product on 2 October 2016, the day after its purchase, and further that the video would have shown that she was dispossessed of the evidence, and that the evidence was thrown in the trash by defendant.  At the summary judgment stage, her testimony should prevail that she returned the item in question and that the defendant destroyed it.  Similarly, all factual inferences are drawn in favor of the non-movant.  Just as she is entitled to this adverse inference that the food product was destroyed because of the failure to maintain the video recording evidence, so too she is entitled to an adverse inference that the food item, had it been preserved, would have shown upon scientific testing that it was, in fact, a rodent and accordingly deleterious for human consumption.

In addition to the failure to preserve video evidence of 2 October 2016, defendant failed to create an incident report.  Exhibit C at 102.  Defendant furthermore took only one statement regarding the incident, and it was from the general manager.  Exhibit C at 116.  The general manager had no knowledge regarding plaintiff's complaint.  Exhibit C at 117.  The corporation accordingly lacks knowledge of plaintiff's return to the restaurant on 2 October 2016 and is therefore unable to contest her corroborated testimony that she was dispossessed of the deleterious

food product and that defendant destroyed it prior to the opportunity for scientific tests to be conducted.  It is improper for defendant to benefit from its failure to preserve the video evidence and the biological evidence in this matter by arguing that plaintiff is unable to discharge a burden of proof that requires this evidence.  Because of this testimony, plaintiff submits additionally that defendant is unable to controvert her position on this issue of spoliation of the evidence and that a Rule 56(f) judgment for the non-movant is appropriate as to spoliation.

Finally, plaintiff notes that her testimony is corroborated calls attention to the affidavit of Chanell Thomas (Exhibit E), who testified that plaintiff did in fact consume the meat part of the sandwich, but not the bread part; that the sandwich had a ratlike appearance; that plaintiff contacted the restaurant on the evening of the purchase; and that she, Chanell Thomas, took the photographs at issue in this matter and authenticated them.  Plaintiff's grandchildren also provided affidavits. Dasia Thomas states in her affidavit that she witnessed plaintiff bite the sandwich; that she witnessed the ratlike appearance of the meat; that she witnessed the call to the restaurant on 1 October 2016; and that she witnessed defendant's employee take the food product and throw it in the trash on 2 October 2016.  Exhibit F.  Donnell Thomas states in his affidavit that he was with plaintiff when she purchased the sandwich on 1 October 2016; that he saw her bite the sandwich and saw its ratlike appearance; and that he was present on 2 October 2016 when he saw the KFC employee took the sandwich from plaintiff.  Exhibit G.  For these reasons, the plaintiff has presented sufficient evidence and created a genuine issue of material fact regarding defendant's breach of a duty it owed to her regarding her actual consumption of the sandwich and its deleterious nature.

C. Causation

Defendant also argues that plaintiff is unable to discharge her burden of proving the causal relationship of her consumption of a deleterious food product and her injury.  To meet her burden of proof in a food poisoning case, the plaintiff must prove that the deleterious condition existed in the product when it was purchased.  *Landreneau v. Copeland's Cheese Cake Bistro, L.L.C.*, 08-647, p.5 (La. App. 5 Cir. 1/13/09) 7 So. 3d 703, 706.  The plaintiff must further prove the existence of a causal relationship between the illness or injury and the consumption of the food. *Id.* In fulfilling this burden of proof, it is not necessary for the consumer to negate every conceivable cause but he must show that it is more likely than not that the food's condition caused the injury of which he complains.  *Griffin v. Schwegmann Bros. Giant Supermarkets, Inc.,* 542 So. 2d 710, 712 (La. App. 4 Cir. 1989).

Plaintiff testified that she ate nothing else that day (Exhibit A at 28-29), which rules out other sources of contagion regarding her gastroenteritis symptoms, as per *Foster*, supra.  Plaintiff has related her gastrological symptoms (Exhibit A at 50) as well as her psychological symptoms to the incident (Exhibit A at 57-63).  Dr. Cooper, the primary care physician, relates the plaintiff's symptoms to the consumption of a deleterious food product:  a diagnosis of anxiety and trauma disorders, with referral for psychiatric treatment and prescription of medications (Exhibit B at 18); weight loss, which can be caused by food phobia (Exhibit B at 20-21); plaintiff's demeanor on the first exam after the incident, which was "frantic," "crying," "shaking" (Exhibit B at 14); she found plaintiff's demeanor consistent with the history (Exhibit B at 19); the plaintiff's demeanor has changed since the incident (Exhibit B at 22); plaintiff's demeanor included crying about the incident at every appointment (Exhibit B at 27); and the analysis of demeanor is an objective component of the examination (Exhibit B at 56).  (In its factual allegation, defendant

mischaracterizes the evidence by stating that "Dr. Cooper further testified that plaintiff did not voice any complaints associated with gastroenteritis such as nausea, vomiting or diarrhea on October 12, 2016. Document 47-3 at 3. By contrast, Dr. Cooper actually testified that "I didn't write anything about that because she was crying so much." Exhibit B at 43.) Dr. Bick, the psychiatrist, relates the plaintiff's symptoms to the consumption of a deleterious food product. Document 47-11.

Plaintiff respectfully contends that this evidence creates genuine issue of fact as to causation element of her injuries.

D. Scope of Duty

Defendant further argues that plaintiff is unable to discharge her burden of proving the scope of the duty owed to her. Document 47-3 at 7 et seq. Defendant's argument on this point focuses on its wishful thinking that plaintiff did not consume a deleterious food product and rather that as a matter of law she is unable to maintain a viable claim on the basis of mere subjective perceptions related to a non-deleterious food product. Defendant's position is foreclosed on this point, however, by the evidence offered, supra, that plaintiff did in fact consume a rat; plaintiff does not allege that she has been damaged by subjective response to the observation of a non-deleterious product or to the consumption of a non-deleterious product—plaintiff by contrast has testified, which testimony is corroborated in several ways, that she has consumed a deleterious product, a rat, and that she has suffered initial physiological and ongoing psychological symptoms because of same.

More to the point, the scope of the duty applicable to a restaurant's service of food to its customers is provided for in the pertinent regulations, which are very specific regarding the duties laid upon restaurant operators:

11

- No person shall hold or have in his possession, whether for storage, exchange, delivery or sale, any adulterated, decayed, decomposing, rotten, souring, or unwholesome foods or drinks.  New Orleans Code of Ordinances, Part II, Chapter 82, Article II, § 82-41.

- No person shall own, keep, maintain, occupy, or otherwise use any room, warehouse, grain elevator, or other building for the storage, handling, processing, or dispensing of food or food products, or for the quartering of any animal or fowl, without carrying out measures which will prevent the entrance of rodents into, or the harboring of rodents under, or within the walls of such room, warehouse, grain elevator, or other building.  LAC, Title 51, Part V, Chapter 3, § 303.

- No animals or birds, other than those essential as raw material, shall be allowed in any area of a food plant. Measures shall be taken to exclude pests from the processing areas and to protect against the contamination of foods in or on the premises by animals, birds, and vermin (including, but not limited to, rodents and insects).  LAC, Title 51, Part VI, Chapter 3, § 327.

In addition to these precautionary provisions, under the LAC, "adulterated food" includes inter alia any food item that "contains any poisonous or deleterious substances, added or otherwise, which may render it dangerous to health"; or "if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food"; or "if it has been prepared, packed, or held under unsanitary conditions whereby it may have become contaminated with filth or whereby it may have been rendered injurious to health." (LAC, Title 51, Part XXIII, Chapter 1, § 101(A).  On the basis of these definitions, the code requires that "all food shall be safe, unadulterated and honestly presented."  LAC, Title 51, Part XXIII, Chapter 11, § 1103.  Plaintiff

respectfully contends that the anti-adulterant measures are in place to promote safety of food products served by restaurants to their customers, and therefore the actual service of a foreign object such as a rat is a prohibited adulteration under the LAC and thus within the scope of the duty owed to plaintiff by defendant, as it is exactly the sort of risk contemplated by the health and safety regulations to which defendant is bound.

Furthermore, plaintiff contends that the facts of the case trigger *res ipsa loquitur* analysis, which has implications, likewise, for the analysis, supra, of the breach element:

> There is no question that the presence of a foreign object in prepared food is a circumstance from which it can be inferred that someone was negligent in the preparation of that food. It is equally clear that the ingredients of the sandwich were in the control of the restaurant staff. Finally, the negligent act of serving food with a foreign object in it is within the ambit of the duty owed to customers.

*Poplar v. Dillard's Dep't Stores, Inc.*, 03-1023, p. 4 (La. App. 5 Cir. 12/30/03), 864 So. 2d 789, 791. Because she has alleged that she ate food adulterated by the presence of a rat, which food was in the control of the restaurant, she has alleged facts sufficient to survive summary judgment, as the *Poplar* court plainly states that serving foreign objects to customers in their food is within the scope of the duty, as well as a prima facie case of breach of that duty, constituting circumstances under *Foster* that permit an inference of the deleterious nature of the food product.

E. Damages

Defendant has not argued expressly that plaintiff is unable to discharge her burden to prove damages. In an abundance of caution, however, plaintiff respectfully notes that her expert psychiatrist has related the onset of trauma disorder and other mental health conditions to the incident at issue in this matter. Document 47-11 at 3. As discussed, supra, plaintiff has testified about her initial physiological and ongoing psychological problems related to this incident.

Exhibit A at 57-63.  Plaintiff respectfully contends therefore that she is able to discharge her burden of proof as to damages.

II.     The Products and Premises Claims

Defendant's argument regarding the other claims in the Complaint is that plaintiff is unable to satisfy the causation element, apparently for the same reasons urged regarding the negligence claim.  Document 47-3 at 9.  Defendant also contends that plaintiff is unable to rely upon an implied warranty of fitness because it does not protect for mere observation of deleterious substances.  Because plaintiff has testified, as described, supra, that she did in fact eat a fried rat that was served to her by defendant, as well as the other evidence discussed, she is able to discharge her burden of proof, and these claims should not be dismissed for the same reasons urged hereinabove.

Conclusion

For these reasons aforesaid, the Motion for Summary Judgment should be denied.

Respectfully submitted,

s/ *Ryan A. Jurkovic*_____
Isaac H. Soileau, Jr. (LSBA No. 21384)
ihs.soileaulegal@gmail.com
Ryan A. Jurkovic (LSBA No. 31384)
rjurkovic@soileaulegal.com
SOILEAU & ASSOCIATES, LLC
1010 Common Street, Suite 2910
New Orleans, Louisiana 70112
504 522 5900 /504 522 5998 (fax)
Attorneys for Plaintiff, Brenda Thomas

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleadings has been served on counsel of record for all parties to these proceedings, by ECF transmission, this 9th day of April, 2019.

s/ *Ryan A. Jurkovic*_____